THE TRUSTEES of the GERMAN LUTHERAN EVANGEL-
ICAL ST. MATTHEW'S CONGREGATION OF BALTIMORE
*vs.* WILLIAM HEISE AND JOHN BRUNS, trading as
HEISE & Co., and others.   HEISE & Co. *vs.* THE
TRUSTEES OF THE GERMAN LUTHERAN CHURCH, &c.
DAVID WILSON and EBEN HUNTING, trading as
WILSON & HUNTING *vs.* THE SAME.   THE TRUSTEES
OF THE GERMAN LUTHERAN CHURCH, &c. *vs.* F. &
H. WEHR.

*Auditor—Equity Practice—Evidence—Mechanics' Lien—Lien
claimant not required under secs. 1 and 11 of Art. 61, of the
Code, to prove an Express contract in respect to the Exact
quantity of Work to be done, &c.—Presumption that Work
was done or Materials furnished with reference to an Under-
standing from the Commencement, &c.— When no such Pre-
sumption will arise—Application of Payments—Interest on
a Mechanics' lien claim—Defective notice of an Intention to
claim a Mechanics' lien—Computation of the Time within
which a Lien claim may be filed—Sec. 23 of Art. 61 of the
Code—Liability of a bond given by the Contractors for the
building of a Church, for Liens for work and materials sup-
plied to the Contractors—Equity Practice—Set-off.*

A case involving the right of certain lien claimants to enforce their liens against
a Church edifice, having been submitted without argument, the Court directed
its reference to the auditor, to report the pleadings, facts and his opinion
thereon.   Under this order of reference the auditor made a statement of the
several lien claims filed, and of the facts offered in support thereof; and as
to several of the claims he stated his opinion to be that they were not sus-
tained by the proof.   Upon objection to the form of the reference and the
power of the auditor to examine the claims and declare his opinion as to
whether they were established or not, it was HELD :

Trustees of the German Luth. Church, &c. *vs.* Heise & Co., *et al.*

That in what was done by the auditor, under the order of reference, there was nothing irregular or unwarranted by the practice of the Court.

Evidence taken on a re-examination before the auditor, without special order obtained for that purpose, as to the same matters of fact upon which the witnesses had been previously examined, will, upon exception thereto, be excluded from consideration.

It is not incumbent upon the lien claimant, under secs. 1 and 11 of Art. 61 of the Code, to establish the fact that there was an *express* antecedent contract made with respect to the exact quantity of work to be done, or materials to be furnished by him. In the absence of evidence of such express contract, the character of the account, the time within which the work was done or the materials were furnished, and the object of the work or materials, may afford proper grounds for the presumption that the work was done or the materials were furnished with reference to an understanding from the commencement, that such work or materials should be done or furnished, if required by the builder; and in such case, it is from the last item in the account that the notice, and the time within which to take the lien, should date.

But where the materials are furnished for separate and distinct purposes, or at different times, and at considerable intervals, or under distinct contracts or orders, though to be used by the contractor or builder in executing one and the same contract with the owner, no such presumption will arise, and the right to take the lien must date from the time of furnishing the different parcels of material, and not from the last item of the account.

When divers debts are due from a person, and he pays money to his creditor, the debtor may, if he thinks proper, appropriate the payments to the discharge of any one or other of these debts; and if he does not appropriate it, the creditor may make an appropriation; but if there is no special appropriation by either party, and there is a current account between them, the law makes an appropriation according to the order of the items of the account, the first item on the debit side of the account being the item discharged or reduced by the first item on the credit side.

Interest should be allowed on a mechanics' lien claim from the time of filing the claim for record.

The notice of an intention to claim a lien under the Mechanics' lien law, which states the amount of the claim down to, and inclusive of the items last charged, but fails to state what the claim is for,—whether work or materials,—would seem to be fatally defective.

Trustees of the German Luth. Church, &c. *vs.* Heise & Co., *et al.*

Where the last item in an account of materials furnished the contractors for the building of a Church, is delivered on the 9th of January, 1873, a claim filed for record on the 9th of July following, is filed before the expiration of the six months within which the claimant is allowed under sec. 23 of Art. 61 of the Code, to file his claim for lien.

The day upon which the last item in the account is charged, being regarded as an entirety, or as a mere point of time, is to be excluded in the computation of the time within which the lien claim may be filed.

A contract for the building of a Church signed by the contractors, and the building committee on behalf of the Church corporation, provided, among other things, that the contractors should find, provide and deliver, at their own cost and charge, *free from all claims, liens and charges whatsoever,* all and every kind of material, and work and labor which might be necessary and proper for the complete execution of the building, &c. It further provided in respect of any changes from the drawings and specifications, that might be made during the progress of the works. On the same day of the execution of the contract, the contractors together with F. and H. Wehr, and two others, as their sureties, executed their joint and several bond to the Church corporation, in the penalty of fifty thousand dollars, for the faithful execution of the contract. The condition of the bond was, that the contractors should well and faithfully fulfill their said contract, and in all respects perform and keep all and singular the stipulations on their part, to be done and performed under the same. The sureties F. and H. Wehr having a claim for bricks which they furnished the contractors, and which were used in the erection of the Church, filed their bill in equity, to enforce the lien, by a decree for the sale of the Church building and ground, upon default of the payment of the claim. The trustees of the Church, in their answer, set up the contract and the bond, by way of defence, and denied the right of the claimants to assert or enforce their lien while they were under an obligation to protect the property from all claims, liens, and charges whatsoever, for and in respect of work done and materials furnished for the erection of the Church. The claimants undertook to relieve themselves of the defence set up by the trustees by showing that there were extensive changes and alterations made in the contract, other than those provided for, without the assent of the sureties, and such as enlarged the liability of the contractors; and that therefore the sureties were discharged. HELD:

1st. That unless the bond had been discharged, as contended by the claimants, it stood liable for all the liens that had been claimed and established for work and materials supplied to the contractors for the erection of the Church, and which might not be paid by the contractors, or with the money due

them on the contract; and it would be against equity and justice to allow the claimants to proceed with the enforcement of their lien, even to the sale of the Church, regardless and in the face of their bond, that no such lien should exist.

2nd. That the bill of the claimants should be returned, giving the Church corporation a reasonable time within which to bring an action on the bond, to have tried and determined the questions, whether the sureties on the bond had been discharged, as contended by them, and if not, to what extent they were liable for the defaults of their principals, the contractors.

3rd. That if it should be determined, that the sureties had been discharged, then the lien could be enforced; but if it should be determined otherwise, and there should be a recovery on the bond, that judgment might be made a set-off to the lien claim of the complainants.

APPEALS from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY and ROBINSON, J.

*Stewart Brown* and *Fred. W. Brune,* for the Trustees of the Church.

By the terms of the contract with the builders, the Trustees of the Church were obliged to pay *as the work progressed* almost the entire contract price, (the last instalments not to be due until long after the completion of the building.) The complainants, F. & H. Wehr, knew the terms of the contract, and *expressly* incorporated them in their bond, thus formally *declaring* that there "should be no liens." The two facts taken together that the bond was given, and that the complainants were to furnish the bricks, would seem to show that the contract was awarded or the terms thereof fixed, at the instance of the bondsmen. The complainants further knew that the Trustees relied on the bond, and after the execution thereof the Trustees had a right to feel satisfied that they might

pay without fear of liens, so far at least as the complainants were concerned; yet, although the complainants, in the delivery of the bricks were, by themselves or their agents, daily present at the building, from first to last, and must have seen and known all the important changes, they suffered the Trustees to pay out nearly all their money without any notice, (till the last) that they would set up a claim. To allow the complainants' claim under these circumstances, to the injury of the Trustees, would be inequitable and unjust.

The assertion by the complainants of their lien claim, which must be based on a continuous contract with the builders *for that building*, and also on the *continuing* agency of the contractors under the original contract, negatives any change in the original contract which will release the complainants as sureties on the bond; or in other words, any change of contract on which the complainants can rely to release *them*, must by destroying the identity of the building, and the relation of the parties, equally affect and destroy the continuity of their own contract on which their large lien claim rests.

But no *changes were* made by the trustees and contractors, in the building, or as to the time of erection, but such as were recognized and provided for by the original contract; and therefore none of these changes operated to release the complainants from their undertaking that there should be no liens, and their obligation to indemnify the trustees against *any* lien claim.

By the joint and several bond, contemporaneous with the contract, (the provisions of which were incorporated therein,) the complainants F. & H. Wehr, agreed in advance not to claim any lien, or the contract amounted to a waiver for a valuable consideration, of any lien growing out of the default of the contractors, which they might otherwise set up against the Church, and, they are therefore now estopped from setting up such a claim in a Court of equity, to the injury of the Trustees.

Trustees of the German Luth. Church, &c. *vs.* Heise & Co., *et al.*

The Trustees are not seeking in this case to recover against the complainants, damages for a breach of contract on the part of the contractors, but interpose the undertaking of the complainants in their bond and contract, as a *defence* to the lien claim, and whether such undertaking does or does not amount to a *technical* estoppel or release, it yet discloses a substantial equity which the Court will enforce to prevent the prosecution by the complainants of a claim inconsistent with their formal acts and declarations, (on the faith of which the Trustees have acted,) and with the said obligations by the complainants assumed.

The fact that there are other co-sureties, one being dead and the other insolvent, on this bond with the complainants, does not change the binding force of the equitable principle which requires a party seeking the aid of a Court of equity, to show on his part conscience, good faith and reasonable diligence.

The Court will consider also under this point, the fact that the complainants are partners, and that the bond so far as they were concerned was a partnership contract in consideration of the fact that they were to furnish the bricks for the Church.

Finally this defence being set up by the Trustees, not by way of *set-off*, technical or otherwise, and not counting on or looking to damages, liquidated or unliquidated *on the bond*, the *form* of the obligation assumed by the complainants, or in what acts or deeds contained, cannot be matters of importance, the only inquiry in that connection being what the obligation really is.   And further, the obligation, whatever its form, operating by way of estoppel, a waiver, release or equitable discharge of liens, the question of parties either to the lien claim or the bond is not material.

Each and all the bondsmen say, in effect, "there shall be no liens, and we waive and release all liens we might

acquire," and each and all, whether asserting a claim jointly or severally should be barred in a Court of equity. *Phillips on Liens, p.* 389, *sec.* 273; *Grant vs. Strong,* 18 *Wall.,* 625; *Sodini and Leiter vs. Winter,* 32 *Md.,* 135; *Benjamin vs. Hillard,* 23 *How.,* 149; *Doub vs. Barnes,* 4 *Gill,* 1-19; *Strawbridge vs. B. & O. R. R. Co.,* 14 *Md.,* 363–6; *Bowman vs Wathen,* 1 *How.,* 193; *Frazier vs. Gelston,* 35 *Md.,* 314; *Dilly vs. Barnard,* 8 *G. & J.,* 187; *Comstock vs. Johnson,* 46 *N. Y.,* 615--621; *Chapman vs. O'Brien,* 34 *N. Y., (Superior Court,)* 524; *Horn vs. Cole,* 51 *N. H.,* 287; *Story's Equity, sec.* 64, *(E.)*

*Samuel Snowden,* for Heise & Co.

Where there is one employment for doing the work, or one order for the furnishing of materials, in the erection of a house, and the work is done or the materials are furnished *continuously,* the lienor is entitled to recover for *all* the work so done or materials so furnished and delivered, if *any* work is done or materials are furnished within six months before the filing of the lien claim. *Miller vs. Barroll,* 14 *Md.,* 173; *Reynolds vs. Stickney, (unreported opinion,) Liber G. E. and J. S. F., No.* 1, *folio* 496.

No special contract in terms is necessary to be proved, but a general request to furnish the material or to do the work is sufficient; and if the work is done or the materials are furnished in pursuance of such request, although actually delivered at different times, the claimant is entitled to recover. *Phillips on Mech. Liens, sec.* 114, and authorities there cited. *Pennock vs. Horner,* 5 *Rawle,* 291.

The fact that the items are furnished as the buildings progress is *prima facie* evidence of a continuous contract, and throws upon the defendant the burden of showing that there was not such contract. *Reynolds vs. Stickney, (unreported opinion,) Liber G. E., and J. S. F., No.* 1, *folio* 496.

Trustees of the German Luth. Church, &c. *vs.* Heise & Co., *et al.*

The testimony conclusively establishes the existence of one order, or agreement for the furnishing by Heise & Co. of the lumber for the Church building; and the materials having been delivered under this order, it was one continuous dealing, and all the items are bound together by this first order, so that the last item is as much a part of the contract as the first, and the lien claim dates from the last item and brings in all the other items in the account as a lien upon the property; any other rule would render the lien of the mechanic a sham and a delusion. *Phillips on Mechanics' Liens, sec.* 230.

The lumber charged in the lien claim having been delivered to Siegman & Jones under one general order therefor, and having been delivered *continuously* during the progress of the building, and notice having been given to the owners within sixty days from the delivery of the last material, the appellees (Heise & Co.) are entitled to a lien for all the lumber furnished by them to Siegman & Jones, for the erection of the Church building.

The rule is well settled that where a payment is made, the debtor has the right in the first place to direct its application to the payment of any claim he may see proper, but if he fails to do so, the creditor may make the application, and if neither applies it, the law will make the application. The application need not be made by the creditor at the time of the payment, but may be made at any time before trial, and may become fixed by verbal declaration or by the terms of the receipt given, or by rendering an account, or *by bringing suit* grounded on such specific appropriation, or by any other act manifesting an intent or inducing a belief that such application has been made. 1 *Am. Leading Cases,* (5th *Ed.*) t. *p.,* 34; *Allen vs. Culver,* 3 *Denio,* 284, 290; *Allen vs. Kimball,* 23 *Pick.,* 473, 475. And such creditor may apply it on bond or open account, secured or unsecured debts. *Mitchell vs. Dall,* 4 *G. & J.,* 361, 372.

In this case the debtor did not at any time direct any of the moneys paid by him to be applied to the account for lumber sold for the Church. It was therefore the right of the appellees, (H. & Co.,) to apply any moneys paid, to the payment of any debt which Siegman & Jones owed them. At the time of the payments they credited them on the account generally, but did not communicate such credits to Siegman & Jones, and such entries being in their own private books, did not indicate such an election so to appropriate the payments, but merely an idea of so appropriating them. *Simson vs. Ingham*, 2 *Barn & Cress.*, 65. When therefore they made out their account, for the purpose of filing their lien claim against the Church, they were authorized to make such application of the payments as they might deem proper, and they accordingly applied them to the satisfaction of all the account owing them by Siegman & Jones, except that owing for lumber furnished by them for the Church, the account for which they caused to be made out, and having filed their lien claim, they at once commenced suit to enforce their claim against the appellants, which in itself was evidence of their intention to apply such payments to the other charges in the account. *Allen vs. Kimball*, 23 *Pick.*, 475.

The payments having been thus appropriated by Heise & Co., they are entitled to be paid for the lumber so furnished by them to the Church, without any regard to the payments made by Siegman & Jones, except as credited on account of the lien claim.

*Wm. F. Frick*, for A. Weiskittel & Co. contended,

1st. That all the iron work in the bill of particulars of the appellees, for which they claim a lien, was covered by one and the same bargain, made at one and the same time.

2nd. That the notice of the intention of the appellees to claim a lien was sufficient. A notice to be a notice at all, must bring home information. If a party already in pos-

session of the circumstances of which the notice proposes to apprise him, the notice is no notice to him, and he needs it not, and no one ought to be bound legally or morally to give him such notice.   Under section 11 of Article 61 of the Code, the appellees were only required to give notice " *of their intention to claim such lien,*" and not to set forth in the notice for what or why.   Of what possible interest or service can it be to a man to know *for what* a lien against his house is claimed, when the lienor has dealt with a contractor?   All the owner need learn from the notice is how much of the contract price he must withhold from the contractor until the lien is paid.   What the lien is for, is a question between the contractor and the lienor, with which the owner has not and cannot have any connection.

The Mechanics' lien law is to be construed liberally ; and usually a notice is considered sufficient in the law in any case, if it puts on inquiry the person to be affected thereby— and does not this general rule apply *a fortiori* to the lien law?   *Gilman vs. Gard,* 29 *Ind.,* 292 ; *Laswell vs. The Presbyterian Church, &c.,* 46 *Miss.,* 280 ; *Putnam, et al. vs. Ross, et al.,* 46 *Miss.,* 338 ; *Oster, et al. vs. Rabeneau,* 46 *Miss.,* 598.

*Theos. B. Horwitz,* for A. Storck & Son.

*Luther M. Reynolds,* for Wilson & Hunting.

*Albert Ritchie* and *Orville Horwitz,* for F. & H. Wehr.

The bond given by the contractors is joint and several, and, therefore, the obligee may proceed against *one* or *all* of the obligors ; but this does not authorize the obligee to proceed against any two, which he may please to select. If this be so, then it is clear that the bond cannot be set up as a defence to an action brought by two of the obligors as co-partners.   *Parsons on Contracts,* 739, and cases there

Trustees of the German Luth. Church, &c. *vs.* Heise & Co., *et al.*

cited; *Milburn vs. Guyther*, 8 *Gill*, 93; *Robertson vs. Parks*, 3 *Md. Ch. Dec.*, 65; *Watkins vs. Zane*, 4 *Md. Ch. Dec.*, 13; *Gibbs vs. Cunningham*, 4 *Md. Ch. Dec.*, 322.

Our statute of set-off does not apply to a *scire facias* on a lien claim. Secs. 12 and 13 of Art. 75 of the Code.

Unliquidated damages cannot be set-off. *Waterman on Set-off*, secs. 139, 279, 292.

The changes made in the contracts, in violation of its terms, and without the assent of the sureties, work a discharge of their bond. *Mayhew vs. Boyd*, 5 *Md.*, 109; *Sharp's Rifle Case*, 33 *Conn.*, 1; *Mitcher vs. Hall*, 5 *B. & C.*, 269; *Perry on Trusts, secs.* 412, 413; *Sinclair vs. Jackson*, 8 *Cowen*, 543; *Miller vs. Stewart, et al.*, 9 *Wheat.*, 680, 702; *Manufacturers' Bank vs. Cole*, 39 *Maine*, 192, 193; 1 *Dutcher*, 444; 15 *Q. B.*, 297.

ALVEY, J., delivered the opinion of the Court.

The bill in this case was filed by Heise and Company against the contractors, and the Trustees of the Church, and the several lien claimants, to enforce a lien against the Church edifice, for the building of which they had furnished the contractors lumber; the balance due on their claim being $3,489.13, according to the account filed.

With the proceedings on this bill were consolidated the proceedings on a bill filed by Frederick and Herman Wehr, partners, trading as F. & H. Wehr, also to enforce a lien claim against the Church edifice, for bricks furnished the contractors, used in the erection of the building; the amount of their claim being $5,949.33.

In these proceedings the several lien claimants were required to come forward and establish their claims, and their right to liens; and among those whose claims were passed upon by the decrees appealed from, were Heise & Company, A. Weiskittel & Company, A. Storck & Son, and F. & H. Wehr, and from the allowance of whose claims the Trustees of the Church have appealed; and for

the disallowance of interest on their claim, Heise & Company have also appealed; and for the entire rejection of the claim of Wilson & Hunting, they have appealed from the decree of the Court below.

Proceedings were conducted and proofs taken in support of claims until the 23rd of March, 1875, when the cause was submitted to the Court below without argument; whereupon the Judge ordered that the cause be referred to the auditor, to report the pleadings, facts, and his opinion thereon. Under this order of reference, the auditor made a statement of the several lien claims filed, and of the facts offered in support thereof; and as to several of the claims the auditor stated his opinion to be that they were not sustained by the proof.

Upon this report of the auditor, Heise & Company, Weiskittel & Company, and A. Storck & Son, made application to the Court for leave to take additional evidence as to certain objections to their claims stated by the auditor; and the Court granted the applications, and allowed additional evidence to be taken. Under this leave, witnesses were re-examined as to the same subject-matter upon which they had been formerly examined by the claimants; and to the allowance of this additional evidence to be taken, and to the re-examination of witnesses upon the same subject-matter, the Trustees of the Church have filed exceptions, and insist that such evidence should be excluded.

In the argument at bar, a good deal was said as to the form of the reference, and the power of the auditor to proceed as he did to examine the claims, and to declare his opinion as to whether they were established or not. But in what was done by the auditor, under this order of reference, we can perceive nothing irregular or unwarranted by the practice of the Court. The auditor is the calculator and accountant of the Court, and when any calculations or statements are required, all the pleadings, exhibits and

proofs are referred to him, so that he be enabled fully to investigate and put the whole matter in proper order, for the action of the Court. His office, while not in all respects the same, is yet, to a certain extent, very analogous to that of a Master in Chancery. His powers and duties are fully stated and defined by Chancellor BLAND, in *Dorsey vs. Hammond,* 1 *Bl.,* 463, 467, and *Townshend vs. Duncan,* 2 *Bl.,* 45, 74. The arrangement and statement of the claims, with the facts applicable to each, as exhibited in the auditor's report, no doubt greatly aided the Court below in disposing of the case ; and it detracted nothing from the value of the statement that the auditor indicated his opinion as to whether the claims were or were not supported by proof.

But the auditor having made his report, under the reference made on the submission of the case, the question is, whether the taking of additional evidence, and the reexamination of witnesses as to facts or subjects upon which they had been previously examined, should have been allowed.

As to the power of the Court to allow additional evidence to be taken, even after the cause has been submitted, that would seem to be clear, though the power is not generally exercised except in cases where, from accident or inadvertence, omissions or defects of proof have occurred, which the party could have readily supplied. A large number of the cases upon this subject are brought together and reviewed by Vice-Chancellor SHADWELL, in the case of *Hood vs. Pimm,* 4 *Sim.,* 101, where it is shown that a Court of Equity will, at any stage of the proceedings before final decree, allow defects in proof to be supplied, provided the party applying has not precluded himself from such indulgence by negligence or delay. This, however, is a discretionary power, from the exercise of which no appeal will lie, and is not therefore a subject of review by an Appellate Court.

The other question raised by the exception, that of allowing witnesses to be re-examined as to subjects and matters of fact about which they have been previously examined by the same party, is one of great practical importance, but is thoroughly well settled upon authority. A witness who has been examined in the cause, as to its merits, should not be examined again without an order; and such order generally embodies a special direction that the witness shall not be re-examined upon any points with respect to which he has already given testimony in the particular cause, unless it be satisfactorily shewn to the Court that there has been mistake, or inadvertent omission, in the previous examination. To afford witnesses facility of repeatedly amending their testimony, as the emergencies of the case may seem to require, would be extremely dangerous to truth and justice, and especially so where the parties themselves are the witnesses to be re-examined. *Rowly vs. Adams,* 1 *M. & K.,* 545. The question was fully considered by Lord THURLOW, in *Vaughan vs. Lloyd,* 1 *Cox,* 313, where the well established rule is stated with great clearness, as also the reasons upon which it is founded. The Chancellor said: "The first question is, whether in any case a witness who has already been examined in the cause, can be again examined before the master without leave of the Court had for that purpose; and this is a dry point of practice. Now if the witness has been examined only to trifling facts in the cause, or if, in truth, he knows more than he has already been examined to, it would most certainly be very hard to prevent the party from having the benefit of his testimony before the master. But the question is, whether the Court has not taken the precaution of making it necessary for the party in that case, to apply for leave of the Court?—which leave the Court will certainly grant whenever the substantial justice of the case requires it, but will put the party under the terms of having the interrogatories approved and settled by the

master, who in so doing will take care that the same witness is not a second time examined to the same facts; not only to prevent the parties being loaded with unneccessary expense, and the cause with useless depositions, but what is still a greater object, to avoid the danger of perjury, which would be incurred by a witness deposing a second time to the same fact, after having seen where the cause pinched, and how his testimony bore upon it." The depositions in that case were suppressed. Many other cases to the same effect could be cited, if it were necessary, but there is only one other to which we shall make reference, and that is the case of *Remsen vs. Remsen*, 2 *John. Ch.*, 495, a decision of Chancellor KENT, in which the authorities are reviewed, and the rules stated, which should govern in taking testimony in Chancery. If, says the Chancellor, "Examinations are protracted from day to day, for any length of time, there is very great danger of abuse from public examinations, by which parties are enabled to detect the weak parts of the adversary's case, or of their own, and to hunt up or fabricate testimony to meet the pressure or exigency of the inquiry. It is to guard against this abuse that examinations-in-chief are not permitted after publication, and that Courts of law will not grant new trials merely to enable a party to accumulate testimony on any given point, or to oppose that which was taken on the opposite side. It is also upon the same grounds, that a witness, who has been examined in-chief before the hearing, cannot be re-examined, before the Master, without an order, and then not to any matter to which he had before been examined; (*Dickens*, 508;) and that a witness once examined before the Master, cannot be re-examined without an order." 2 *Ves.*, 270; 2 *Madd. Ch.*, 392, 393. See also 3 *Greenl. Ev.*, sec. 336, where the same rules are stated.

In this case, leave was obtained to take additional testimony in reference to certain objections made to the accounts

of the claimants, but in no case, except that of *A. Storck & Son*, was it brought to the attention of the Court that it was the purpose of the parties to re-examine witnesses and parties who had been previously examined in regard to the same subject-matter. In Storck's case, there was special application made for leave, and leave given to re-examine G. J. Storck. But in the other cases, parties and witnesses who had been previously examined, were re-examined as to the same matters of fact, and repeated, with some variations, their former depositions, under the leave to take additional evidence. The evidence thus taken on re-examination, without special order obtained for that purpose, must be excluded from consideration. It was evidence introduced into the case without warrant or authority, and should have been suppressed or excluded on the exception of the appellants.

Having thus disposed of the question of evidence, applicable to the cases of Heise & Company, Weiskittel & Company, and Storck & Son, we shall now proceed to consider the claims separately, as presented in the record, and determine whether they are established or not.

1. *As to the claim of Heise & Company :*

This claim is for lumber furnished the contractors, and which was used in the erection of the Church. There is no question as to the quantity of lumber furnished; nor is there any question as to the regularity or form of the proceedings taken to fix the lien.

The objections to the claim are, first, that the materials were not furnished under a continuous contract, and, as nearly all the materials were furnished more than sixty days before notice given of claimants' intention to claim a lien, under the Code, Art. 61, sec. 11, and more than six months before the time of filing the lien claim for record, under the 23rd section of the same Article of the Code, therefore the lien is not good, except for the materials actually furnished within those periods; and, secondly,

that the claim is subject to credits that have not been given.

The account for lumber furnished the Church commenced on the 3rd of April, 1872, and concluded on the 14th of February, 1873. Notice of the claimants' intention to take the lien was given on the 9th and 12th of April, 1873, and the lien claim was filed for record on the 21st of June, 1873. If, therefore, the theory of the appellants, the trustees, be correct, there is but a very small portion of the account embraced by the lien.

The account, as stated and filed with the claim for lien, and which is proved to be correct, shows that the materials were continuously furnished within the period stated, during the progress of the building. The items are very numerous, and deliveries were made at short intervals of a few days, as the materials were wanted at the building; and this course of dealing continued during the entire period covered by the account.

The lien law, *Code, Art.* 61, *secs.* 1 *and* 11, speaks of the *contract* for furnishing work or materials to the builder, or other person than the owner; but we do not understand from this that it is incumbent upon the claimant to establish the fact that there was an *express* antecedent contract made with respect to the exact quantity of work or materials to be done or furnished by him. In the absence of evidence of such express contract, the character of the account, the time within which the work was done or the materials were furnished, and the object of the work or materials, may afford proper grounds for the presumption that the work was done or the materials were furnished with reference to an understanding from the commencement that such work or materials should be done or furnished, if required by the builder; and in such case, it is from the last item in the account that the notice, and the time within which to take the lien, should date. If this were not so, in every case where there is no express con-

Trustees of the German Luth. Church, &c. vs. Heise & Co., et al.

tract, the mechanic or material man would be under the necessity of taking several liens during the progress of a single building. But where the materials are furnished for separate and distinct purposes, or at different times, and at considerable intervals, or under distinct contracts or orders, though to be used by the contractor or builder in executing one and the same contract with the owner, no such presumption will arise, and the right to take the lien must date from the time of furnishing the different parcels of material, and not from the last item in the account.

In this case, there was such a continuous dealing, and running account of the materials furnished, and the deliveries were at such short intervals, and in such quantities, that the presumption arises that it was understood from the beginning that the claimants were to furnish the materials charged for as they were required in the progress of the building. And this presumption, we think, upon a fair construction of the evidence, is not overcome or removed by anything stated either in the testimony of William Heise, or his witness, J. G. Jones. We are therefore of opinion that the Court below was correct in regarding this lien as established; but to what extent will depend upon the next question to be considered.

And that question is, how are certain credits to be applied to the discharge of the debit items of the account?

It appears that there were large dealings between Heise & Company and Siegman & Jones, the contractors. The former kept but one general account of the materials furnished to the latter, the materials being furnished for different buildings; but in charging the materials it was noted in the account for what particular building or object the materials were supplied. This general account ran from 1871 to June, 1873. On this account several credits were entered, with no other special application than such entries on the credit side of the account, with dates and amounts, will have assigned them by law. When the

materials supplied for the Church were segregated from the general account, and put in a separate account to be filed with the claim for lien, all the credits were omitted, except one of $218.95, and the way that credit was placed on the account of the lumber furnished for the Church is explained by witness Myohl, the book-keeper. He says that he ascertained the amount of the credit thus placed on the account, by first making out a correct bill for all the lumber furnished to the Church, and then, by balancing the general account, he found that the contractors, Siegman & Jones, had a balance to their credit of $218.95, which he placed to the credit of the Church account. Thus applying the credits to the other portions of the general account to the exclusion of that portion of it which was for materials supplied for the Church. This the claimants were not warranted in doing.

The general principle governing the application of payments, in a case like the present, is well settled. It is perfectly clear upon all the authorities since *Clayton's Case*, 1 *Merv.*, 585, decided by Sir WM. GRANT, that where divers debts are due from a person, and he pays money to his creditor, the debtor may, if he thinks proper, appropriate the payment to the discharge of any one or other of those debts ; and if he does not appropriate it, the creditor may make an appropriation ; but if there is no special appropriation by either party, *and there is a current account between them,* as was the case here, the law makes an appropriation according to the order of the items of the account, the first item on the debit side of the account being the item discharged or reduced by the first item on the credit side. *Pemberton vs. Oakes,* 4 *Russ.,* 154. And where the demand is *entire,* as the general account against Siegman & Jones was, at the time of the payments made and entered, the creditor will not be allowed to separate or split such demand into parts, and appropriate a general payment to that part which is most advantageous to him

to be paid.    This is well illustrated by the case of *James vs. Child*, 2 *C. & J.*, 678, in which an attorney having delivered a bill containing taxable items, and items not taxable, and there being a general payment made on account, it was held that the attorney could not appropriate the payment to that part of the bill which was most to his advantage to have paid.    Here there was no distinct appropriation of the payments by either party to any particular part of the account, but the payments were made on account generally, and were so entered ; and in such case, by operation of law, the appropriation is at once made to the discharge or reduction of the first item or items on the debit side of the account.    *Neidig vs. White-ford*, 29 *Md.*, 179, and cases there cited.

From these principles it follows that the payments made by Siegman & Jones on the general account must be applied according to the order of the items of the account as it stood at the time of the payments made, and before the segregation of the items furnished for the Church. This can be done upon the re-adjustment of the claim, upon the cause being remanded to the Court below.

As to the question of interest, involved in the appeal taken by Heise & Company, we need only say, that we think they are entitled to a reversal of the decree in that respect.    Interest is not charged or claimed in the account on which the lien was taken, and hence it is contended that none should be allowed.    But we think, upon principle and analogy, inasmuch as the lien became a claim of record, enforcible without stay or condition, interest should be allowed from the time of filing the lien claim for record.    From that time, therefore, interest will be allowed on whatever may be ascertained to be the amount due.

2. *As to the claim of A. Weiskittel & Co. :*

This claim is for materials furnished, and was filed on the 18th of July, 1873.    The notice of the intention to

Trustees of the German Luth. Church, &c. *vs.* Heise & Co., *et al.*

claim the lien was given on the 11th of March, 1873 ; and the last item in the account, as exhibited in the record, is charged on the 3rd, of January, 1873. The notice states the amount of the claim down to and inclusive of the items charged on the 3rd of January, but fails to state what the claim is for,—whether work or materials.

As decided in the case of *Thomas vs. Barber*, 10 *Md.*, 380, the object of the notice is to impart information to the owner of the amount and character of the claim intended to be fixed as a lien upon the property, so that he may protect himself in his future dealings with the contractor. The requirement of the law in this respect imposes no hardship upon the party asserting the claim, but only secures to the owner, as means of protection, what the Legislature intended for his benefit. The notice here would seem to be fatally defective ; but if this were not so, the lien fails for other and distinct causes.

And the first of these is, that the notice was not given in time. As we have seen, the last item embraced in the amount for which the lien is claimed, was furnished January 3rd, 1873, and the notice was not given until the 11th of March following,—more than sixty days after the last item to which the notice refers. It was attempted to be shown that there was a mistake in the date of this last item in the copy of the account filed in the cause and inserted in the record ; that instead of January 3rd, it should have been February 3rd, 1873 ; but that attempt failed. The recording clerk proves that the account filed for record was originally recorded by him, and that he transcribed the item in question as of January 3rd, 1873, and it was from the record thus made that the copy was furnished which was filed in this cause. He now states that upon a closer examination he *thinks it is more like February*, and and that he has *corrected the record to correspond with that belief.* But there was no attempt to show how the fact really was, whether the materials charged were really de-

livered on the 3rd of February instead of the 3rd of January. A doubtful reading of the account was certainly not the best evidence of the fact as to the time when the articles were actually delivered. On the contrary, Mr. Plitt, one of the firm of Weiskittel & Company, when examined in support of the claim, upon being shown and requested to examine the copy of the account furnished from the record, containing the item as of January 3rd, expressly stated that the account was correct, and that the materials were delivered *at the times* and prices mentioned. Upon no subsequent examination was there any attempt to explain this evidence.

But there is still another objection which is equally fatal to the lien, and that is, that the materials charged as of January 3rd, 1873, were furnished under a separate and distinct contract or order from that under which the other articles in the account were furnished ; and even if the notice had been otherwise sufficient, and within time to embrace the articles charged as delivered on January 3rd, it would not be in time to embrace the previous part of the account. The evidence on the subject is explicit, and leaves no room for doubt.

For the reasons stated, this lien claim must be wholly rejected.

3. *As to the claim of A. Storck & Son:*

This claim is also for materials furnished to the contractors for the Church, and was filed for record on the 8th of July, 1873, for $3,297.54. Notice was given on the 18th of March, 1873, of the intention to take the lien, and the only question raised upon the enforcement of the claim is, whether the articles charged in the account filed with the claim of lien were furnished under such contract or understanding as to be embraced by the notice. The first item in the account is charged as of June 25th, 1872, and the last as of January 29th, 1873.

It would appear that it was understood from the commencement of the account, that the materials charged for

should be furnished as they were required for the Church. The character of the account, and the course of dealing between the parties, strongly enforce this construction of the evidence. The account and dealings between the parties, in respect to the materials furnished by the claimants, were continuous, the items numerous, with but short intervals of time, and all for the one object—the construction of the Church. In such case, the delivery of the last item will be regarded as the complete furnishing of all the materials charged in the account, as under an entire contract. We think, therefore, that the Court below was right in sustaining the lien of A. Storck & Son.

4. *As to the appeal of Wilson & Hunting:*

The claim of the appellants is for materials furnished the contractors for the Church, and the last item in the account was delivered on the 9th of January, 1873, the notice of intention to take the lien was given on the 6th of March, 1873, and the claim was filed for record on the 9th of July following.

There is no dispute in regard to the claim, or the right to the lien, provided it was filed *at or before* the expiration of six months after the materials were furnished, as required by the Code, Art. 61, sec. 23. The Court below determined that the claim was barred by the limitation in the section of the statute to which we have referred, and accordingly dismissed the bill as to this claim ; and it is from such disposition of the claim that the claimants have appealed.

It is contended for the claimants, that under the 23rd section before referred to, they had six months after the completion of the building within which to file the claim for lien; but in this construction we do not agree. The word "finished," used in the statute, has reference alone to work for which a lien may be taken, and in that connection is not to be read as synonymous with completion of the building upon which the work has been bestowed.

A mechanic may finish his work upon a building without completing the building. The law does not say that the lien shall exist until after the expiration of six months after the building has been finished or the materials furnished, but "until after the expiration of six months after the *work* has been finished or the materials *furnished,* although no claim has been filed therefor, but no longer, unless a claim shall be filed *at or before* the expiration of that period."

But, upon the construction which we place upon the terms of the statute, we think the claim in question ought to be allowed. The day upon which the last item in the account is charged should be excluded, in the computation of the time within which the lien claim could be filed. In this case the six months commenced to run on and with the 10th of January, 1873, the 9th, the day on which the last item in the account was delivered, being regarded as an entirety, or as a mere point of time, and hence excluded from the computation. This would seem to be in accordance with the rule now generally established, though there may be exceptions to it. *Bigelow vs. Wilson,* 1 *Pick.,* 465 ; *Connell vs. Moulton,* 3 *Denio,* 163 ; *Sheets vs. Selden,* 2 *Wall.,* 177 ; *Webb vs. Fairmaner,* 3 *M. & W.,* 473 ; *Calvert vs. Williams,* 34 *Md.,* 672. There is no sufficient reason suggested why the rule should not be applied to this case ; and, according to the rule, the entire day of the 9th of July, 1873, was included within the six months allowed to the claimants for filing their claim for lien. The decree, therefore, as to this claim, must be reversed.

5. *As to the claim of F. & H. Wehr :*

This claim was presented by a separate bill in equity, filed by the claimants against the contractors and the Trustees of the Church, seeking to enforce the lien, by a decree for sale of the Church building and ground, upon default of payment of the claim. The claim is for

Trustees of the German Luth. Church, &c. *vs.* Heise & Co., *et al.*

$5,949.33, for bricks furnished the contractors, and which were used in the erection of the Church. It is conceded that the claim is correct, and that all the proper steps were taken to obtain the benefit of a lien ; the only question in regard to the claim being, whether the claimants are in a position to enforce the lien, in view of their obligation on the bond given by the contractors, which is set up in defence by the Trustees of the Church.

The contract for the building of the church was executed on the 22nd of January, 1872, and was signed by Siegman & Jones, the contractors, and the building committee on behalf of the church corporation. This contract provides, among other things, that the contractors should find, provide and deliver, at their own cost and charge, *free from all claims, liens and charges whatsoever,* all and every kind of material, and work and labor which might ''be necessary and proper for the complete execution of the building, and erect, build, furnish and complete in a good and perfect manner, (to the entire satisfaction of the architects,) the building and works, agreeably and conformably in all and every respect to the specifications, drawings, dimensions and explanations which may become necessary, according to the true intent and meaning of the drawings and specifications.'' It further provides, ''that should the building committee appointed by said congregation desire to make any changes from the drawings or specifications at any time during the progress of the works, the same shall be carried out by said Siegman & Jones, without making void, or in any manner affecting this contract; such changes, whether *in addition to* or deduction from the original works, shall be specified in writing, signed by the contractors, and the architects and the building committee. The sum to be paid or allowed for said changes or alterations, to be fixed or allowed by the architects, and specified in the writing aforesaid. The decision of the architects on this and all other matters,

and in cases of dispute, shall be final and binding on all parties.'' And in another clause it provides, ''that whatever may be necessary to be done in order to complete the building, according to the true intent and meaning of the drawings and specifications—such works, *although they do not appear in either*, are to form part of the contract, as much as if fully set forth in both, and no extra charge made for the same.''

The contract price for the building was $35,235.00, and the building was to be completed by the 1st of November, 1872, provided one additional month should be allowed in case it was found necessary to pile the foundation.

On the same day of the execution of this contract, the contractors, together with Frederick and Herman Wehr, and two others, as their sureties, executed their joint and several bond to the Church corporation, in the penalty of fifty thousand dollars, for the faithful execution of the contract. The condition of the bond is, that the contractors, Siegman & Jones, ''shall well and faithfully fulfil their said contract, and in all respects perform and keep all and singular the stipulations on their part to be done and performed under the same.''

The Trustees of the Church, in their answer, set up the contract and the bond, by way of defence, and deny the right of the claimants to assert or enforce their lien while they are under an obligation to protect the property from all claims, liens, and charges whatsoever, for and in respect of work done and materials furnished for the erection of the Church. The Trustees aver, that the contractors have been paid more than two-thirds of the contract price of the building, and that such payments were made on the faith of the security that the Church corporation held in the bond ; and that there are lien claims asserted against the property, including that attempted to be enforced by the present claimants, to the amount of about $19,500. The Trustees also aver, that the contractors

have failed to execute their contract; that the work was defectively done, and that the Church is still incomplete.

To this answer the claimants put in the general replication; and in the proof, though not in the pleadings, they undertake to relieve themselves of the defences set up by the Trustees, by showing that there were extensive changes and alterations made in the contract, other than those provided for, without the assent of the sureties, and such as enlarged the liability of the contractors; and that, therefore, the sureties are discharged.

Upon these questions a large mass of very conflicting evidence has been produced.

The Court below held that the claimants were not estopped from asserting their lien against the property, and that the defendants, the Trustees of the Church, could not set up any claim for damages for the non-performance of the contract by Siegman & Jones, by way of counter claim or set-off against the lien claim of the claimants sought to be enforced, but that the defendants should pursue their remedy at law by an action on the bond, and accordingly decreed a sale of the Church property, for the satisfaction of the claim, unless the amount was paid within thirty days from the date of the decree.

It does not appear that the Court below passed upon the question of the discharge of the sureties in the bond, but left that question to be determined when the bond was sued on at law. In this we think the Court was right. The question of the discharge of the sureties, as also the question of the non-performance of the contract by the contractors, depending as they do upon a great variety of conflicting evidence, should be tried with the assistance of a jury.

But we think the Court below was in error in decreeing as it did with respect to the claim of the claimants. Unless the bond has been discharged, as contended by the claimants, it stands liable for all the liens that have been

claimed and established for work and materials supplied
to the contractors for the erection of the Church, and
which may not be paid by the contractors, or with the
money due them on the contract; and it would be against
equity and justice to allow the claimants to proceed with
the enforcement of their lien, even to the sale of the
Church, regardless and in the face of their bond that no
such lien should exist.  There is no reason or justice in re-
quiring the Church to pay off the lien, or allow the Church
edifice to be sold for its payment, and then be compelled
to sue on the bond to recover the money back from the
same parties receiving it under the lien.  A Court of
equity should rather stay than enforce such a proceeding.

The Court, therefore, should have retained the bill of
the claimants, giving the Church corporation a reasonable
time within which to bring an action on the bond, to have
tried and determined the questions, whether the sureties
on the bond have been discharged, as contended by them,
and if not, to what extent they are liable for the defaults
of their principals, the contractors.   If it should be deter-
mined, from anything that has occurred, that the sureties
have been discharged, (in regard to which we intimate no
opinion,) then, of course, the lien can be enforced ; but if
it be determined otherwise, and there should be a recovery
on the bond, that judgment may be made a set-off to the
lien claim of the present claimants.  Such application of
the doctrine of set-off or compensation is well established
in Courts of equity, and the ordinary principles of justice
would seem to require it in this case.   In the case of *Smith
& Talbott vs. Donnell,* 9 *Gill,* 89, it was said by this Court,
that "the doctrine, that in Chancery equitable set-offs
will be allowed, where reason and justice require it,
although not authorized by any statutory enactment, is so
fully established, as to render unnecessary reference to
adjudications on the subject."  The Court referred to the
case of *Lindsay vs. Jackson,* 2 *Paige,* 581 ; but for addi-

tional authorities upon the same subject, applying the doctrine of equitable set-off, see ˙2 *Sto. Eq. Juris.*, sec. 1437 *a; Lord Cawdor vs. Lewis,* 1 *Y. & Coll.*, 427, 433 ; 2 *Pars. Contr.*, 240, 243, (*4th Ed.*,) and cases there cited ; *Beasley vs. D'Arcy,* 2 *Sch. & Lefr.*, 403, *note to O'Mahoney vs. Dickson; South Eastern R. Co. vs. Brogden,* 3 *Mac. & Gord.*, 25.

If the property has to be sold for the satisfaction of other lien claims against it, the amount distributable to the present claimants, upon the assumption that they may ultimately be enabled˙ to enforce their lien, should be set aside to abide the result of the action on the bond.

It follows from what we have said, that the decrees appealed from, as well as that passed in the case of Heise & Company against the Trustees and others, as that passed in the case of F. & H. Wehr against the Trustees of the Church, must be reversed ; and the cause will be remanded that such orders and decrees may be passed therein, as will conform to the principles stated in this opinion.

*Decrees reversed, and*
*cause remanded.*

(Decided 10th May, 1876.)