EMILY MOYES *vs.* FRED H. KIMBALL and others.

CHARLES T. FITZGERALD, in Equity, *vs.* SAME.

GEORGE B. BROOKS, in Equity, *vs.* SAME.

Androscoggin.    Opinion December 5, 1898.

*Lien.   Sureties.   Estoppel.*

When a contractor has given bond to the owner of the building he has contracted to erect, and one of the conditions of the bond is that the building shall be turned over to the owner with all lien claims "fully discharged, legally waived, or good and sufficient indemnity therefor" furnished to the owner, a surety upon the contractor's bond cannot himself maintain a bill in equity to enforce a lien against the building.

A surety should be held to do precisely what he agreed to do, and having agreed that the building should be turned over to the owner free from liens, he is estopped from enforcing any.

ON REPORT.

The first action was debt on a bond, and the other two were suits in equity to enforce lien claims on a dwelling-house of the plaintiff, Emily Moyes.

The facts are stated in the opinion.

*W. H. White and S. M. Carter*, for Emily Moyes.

*R. W. Crockett*, for Fred H. Kimball.

*D. J. McGillicuddy and F. A. Morey*, for Bearce & Clifford.

*Geo. C. Wing*, for George B. Brooks.

*W. H. Newell and W. B. Skelton*, for Fitzgerald & Lane, argued:

1.   Fitzgerald was surety in the contractor's bond, which provided that the building should be delivered to the owner on or before Dec. 15, 1896, with all lien claims arising from contracts legally waived, fully discharged or good and sufficient indemnity given.

2.   Fitzgerald furnished materials which went into the construction of the building.

3.   Fitzgerald brought a bill in equity to enforce his lien.

4.   The remaining sureties contest the claim because it costs them less if the claim is disallowed, than it would to have their liens allowed and completed.

5.   All the parties in interest are before the court and the entire matter can be disposed of under this report.

6.   A fair interpretation of the bond, in the light of the circumstances, the conduct of the parties, and the language used show that neither the owner, the contractor nor the sureties, intended to provide that no liens should be placed upon the building, but that they should be discharged.

7.   That on the part of Fitzgerald there was no waiver, no estoppel, and no covenant against his lien.

8.   That a disallowance of his lien would be a hardship upon him that parties in interest do not have in contemplation.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

SAVAGE, J.   The first case is an action of debt on bond signed by the defendant Kimball as principal and by the other defendants, Bearce & Clifford, George B. Brooks, C. T. Fitzgerald and George W. Lane, as sureties. The condition of the bond is as follows: "Whereas the said F. H. Kimball has contracted with the said Mrs. J. A. Moyes to furnish or cause to be furnished all labor and materials for the erection and construction of a wooden

dwelling-house, on the land of said Moyes on the westerly side of Horton street in said Lewiston, in accordance with the plans and specifications made therefor by Coombs, Gibbs & Wilkinson, architects, of said Lewiston, if therefore, the said Kimball do and perform all acts necessary to the complete execution of said contract in accordance with said plans and specifications, and shall turn the same over to the said Mrs. J. A. Moyes, her heirs, executors, administrators and assigns on or before the fifteenth day of December, 1896, completed as aforesaid, with all lien claims arising from contracts made directly or indirectly by said Kimball, fully discharged, legally waived or good and sufficient indemnity therefor given said Moyes, then this obligation shall be void; otherwise shall remain in full force."

The other two cases are bills in equity to enforce liens for materials furnished to Kimball and used in the construction of the house mentioned in the bond. The plaintiffs in the bills in equity are sureties on the bond, and are defendants in the action at law brought by Mrs. Moyes on the bond. The actions are reported together, with the stipulation that if Fitzgerald and Brooks cannot maintain their liens, decrees shall be entered accordingly in the equity suits, and judgment shall be entered for the plaintiff in the suit on the bond for the sum of $214.79 with interest; otherwise judgment shall be for the plaintiff in the bond case for the amount of the three lien claims with costs thereon, less a specified amount due from the plaintiff on the contract; and decrees shall be entered accordingly in the equity suits.

The vital question is whether the plaintiffs in the bills in equity can enforce liens upon the property of Mrs. Moyes, under the circumstances of this case. The contractor, Kimball, by his bond, agreed with the owner, Moyes, to turn the building over to her " with all lien claims arising from contracts made directly or indirectly by said Kimball fully discharged, legally waived, or good and sufficient indemnity therefor given said Moyes." The plaintiffs in the lien suits as sureties of Kimball have also contracted with Mrs. Moyes that Kimball shall turn over the building free from liens. Having contracted that the building shall be turned

over free from liens, can they themselves enforce liens against it, in spite of their contract? This is the question.

It is suggested that the contract in the bond is not that there shall be no liens, but that all liens shall be discharged, or waived, or indemnified against, and that therefore the sureties were not estopped from creating liens, but were only bound to see them discharged. We do not, however, perceive that this distinction aids in the solution of the problem. If it should be held that one who has contracted that there shall be no liens is himself barred from enforcing one, so likewise ought one to be, who has contracted that all liens shall be discharged, waived or indemnified. For, in the one case as in the other, the object of the contract is that the owner shall receive the building from the contractor free from any burden or incumbrance in the nature of liens. Liens unless enforceable are harmless and useless. Of what avail is it to a surety in this case that he may create a lien if he cannot enforce it? So if it be said that the language of the condition in the bond contemplates that liens may be created, and only requires the sureties to discharge them, it does not necessarily follow that it also contemplates that the sureties themselves may create liens. A lien is created by force of law and may exist for the benefit of others than the sureties. The question still remains whether a surety who has agreed that liens shall be discharged may nevertheless enforce one. These lienors agreed that the liens should be discharged, waived, or indemnified against. Instead of discharging or waiving, or indemnifying, they are seeking to enforce, which is precisely the thing that they contracted should not be done. We see no good reason why the doctrine of estoppel is not as applicable in these cases as it would be if these sureties had contracted against the creation of liens.

It is also suggested that this is virtually a contest between two sets of sureties, those who seek to enforce liens, and those who have none, and that although it would be inequitable to enforce these liens to the injury of the owner of the building, and in violation of the condition of the bond given to her, still in this case, the sureties are all parties in court, and it is not inequitable to

require the sureties who have no liens to contribute to those who
have.    The rights of the sureties as to contribution, depend upon
what are the implied relations among themselves.    There is gener-
ally the implied contract between sureties that those who do not
pay directly on the principal's account shall contribute to those
who are compelled to pay.    But what in this case would any
surety be compelled to pay?    If the lien of one of the sureties is
valid and enforceable, then any one of them can be compelled to
pay, and the others to contribute to him.    If not enforceable,
there is no liabibity to pay in the first instance, and hence, it would
seem, no implied contract to contribute.    The implied liability to
contribute depends upon the nature of the principal contract.    If
between the obligee and the sureties no lien can be enforced, if
there is no valid lien, then between the sureties themselves, how
can there be any liability to contribute?    Are not all rights, both
of principal and sureties, to be determined by the construction of
the conditions in the bond?    The contract which was implied
can not be broader than the one which was expressed.    It would
be a singular result if a surety should be estopped to enforce a lien
as against the obligee of the bond on the ground that it would be
in violation of his contract, and at the same time be enabled to
compel contribution from a co-surety, so as to secure the benefits
of the same lien, created, if at all, in violation of the same con-
tract.

The sureties who seek to enforce liens cite *German Lutheran
Church* v. *Wehr*, 44 Md. 453; *Atlantic Coast Brewing Co.* v. *Don-
nelly*, 59 N. J. Law, 48, and *Atlantic Coast Brewing Co* v. *Clem-
ent*, 59 N. J. Law, 438.

In the Maryland case, the surety on the bond having furnished
materials for the building, filed a bill in equity to enforce a lien
therefor.    The bond was set up as a bar in answer to the bill.
The claimants in reply said that there had been extensive changes
and additions in the performance of the contract, increasing the
liability of the sureties, whereby the sureties had become dis-
charged.    The court said:    "It would be against equity and jus-
tice to allow the claimants to proceed with the enforcement of

their lien, even to the sale of the church, regardless and in the face of their bond that no such lien should exist. There is no reason or justice in requiring the church to pay off the lien, or allow the church edifice to be sold for its payment, and then be compelled to sue on the bond to recover the money back from the same parties receiving it under the lien. A court of equity should rather stay than enforce such a proceeding." But the court also held that the bills should be retained, to give the church a reasonable opportunity to bring an action on the bond, to have tried and determined the questions whether the sureties on the bond had been discharged as contended by them, and if not, to what extent they were liable for the default of their principals, the contractors. The court said: "If the sureties are discharged, then the lien can be enforced. But if it be determined otherwise, and there should be a recovery on the bond, that judgment may be made a set-off to the claim of the present plaintiffs. Such application of the doctrine of set-off or compensation is well established in courts in equity, and the ordinary principles of justice would require it in this case." It seems to be assumed (though the question is not discussed) that a surety on a contractor's indemnifying bond is not estopped from setting up a lien. But the doctrine of equitable set-off was invoked to prevent the surety from enforcing his lien against the building. And this doctrine was invoked for the benefit of the owner, and not for the benefit of the lienor. The bill by the surety to enforce his lien was retained so that the owner could get judgment against the surety, and then set off the judgment against the lien—a fruitless enforcement of the lien. It will be observed that the logic of this decision is to the effect that a surety's lien will not be enforced against the equities of the owner of the building.

The two New Jersey cases (in reality but one case at two different stages) follow the Maryland case, and go further. They sustain the right of the surety to maintain an action expressly on the ground that otherwise he would lose the power to enforce contribution from co-sureties.

We can perceive no other practical reason for sustaining these

bills, than to permit these sureties to lay the foundation for a sup-
posed right of contribution from their co-sureties, which we have
already discussed. · By the doctrine of equitable set-off, it is clear
that the full amount of the sureties' liens would have to be set off
against the judgment on the bond; otherwise the result would be
inequitable to Mrs. Moyes, the obligee.  For if less than the full
amount of the liens be set off, her property would be holden for
the balance, in spite 'of the sureties' agreement that the building
should be turned over free from liens.  Thus, it is clear that the
sureties would gain nothing by their suits.  So, even if it were con-
ceded that co-sureties are liable to contribute, we have no power to
compel contribution in these proceedings.  In the common law
action on the bond, we can only render judgment at law.  In the
bills in equity, the co-sureties are not parties.  In no aspect of the
case, can we now adjust the equities among the sureties.

But dismissing these considerations as argumentative rather than
decisive, we prefer to rest our decision upon the broader ground
that the sureties should be held to do precisely what they agreed
to do, and that having agreed that the building should be turned
over to the owner free from liens, they are estopped from enforcing
any.  This would seem to be good law on general principles, with-
out the citation of authorities.  But we find the same view has
been entertained by other courts.  In a similar case in Pennsyl-
vania, it was said, "If the plaintiff can recover upon a mechanic's
lien against this building, the condition of the bond would be vio-
lated, and he would thereupon become bound upon a breach of
condition to reimburse to the defendant whatever the defendant
was obliged to pay him as a mechanic's lien creditor.  He volun-
tarily made himself surety for the original contractors that he
would indemnify the defendant against all charges, claims, liens,
mechanic's liens, or any incumbrance or debt in the nature of a
lien or charge, of any kind whatsoever.  This is not a mere under-
taking not to file a lien, but a contract by this particular plain-
tiff that the building shall be delivered to the defendant free of
all charges, claims, liens. . . . . .  To perform this contract, there

must be no debt, charge or lien of any kind at the time of delivery. How then can the plaintiff have a lien himself without being bound to remove it just as much as if it were held by a stranger? But if he is bound to remove it, he certainly cannot be permitted to enforce it. . . . . When the necessary legal effect of his contract as a surety is that he would be bound to discharge a lien in his own favor the moment it was obtained, he must be held to have waived all right to file such a lien." *Rynd* v. *Pittsburg Natatorium*, 173 Pa. St. 237. Again, "It is inconsistent that one who guarantees that there shall be no lawful claim for work or materials furnished to the original contractor shall himself be permitted to occupy such a position. He cannot be permitted to recover without violating his contract of suretyship." *Gannon Exr.* v. *Central Presbyterian Church*, 173 Pa. St. 242. So in Washington. "It is clear to us," the court said, "from the face of the bond that it was the intention of all parties thereto that the owner of the building should thereby be secured from the enforcement of any liens against the property, or from being held liable on any account growing out of the contract with Jordan. This appearing from the face of the bond, it must be presumed that the sureties intended to bind themselves to that end when they signed it, and the respondent Morse having been one of the sureties, he could not in the face of this agreement to protect against liens under the contract, file and enforce one himself. *Morse* v. *Mansfield*, 10 Wash. 373.

"It would be inequitable to allow a person to enter into a solemn agreement to protect another from certain contingencies, and thereafter, and while such agreement was in full force, to himself seek to enforce the special liability which he had obligated himself to protect against." *Spears* v. *Lawrence*, 10 Wash. 368.

We think the reasoning in these cases is sound. We think it must be held that all the parties to the bond, principal and sureties, intended what they said, that no liens should be enforced against the building. The sureties expressly so agreed with the owner, and such, we think, was their implied contract inter sese.

In accordance with the stipulations in the report, the entries will be,

In Moyes v. Kimball et als.,

> *Judgment for plaintiff for $214.79, with interest.*

In Fitzgerald, in Eq., v. Kimball et als.,.

> *Bill dismissed.*

In Brooks, in Eq., v. Kimball et als.,

> *Bill dismissed.*